KOZINSKI, Circuit Judge,
with whom Circuit Judges O’SCANNLAIN and FRIEDLAND join, dissenting:
Today’s opinion claims to “take the Supreme Court at its word,” but it fetishizes a selection of the Court’s words at the expense of its logic. This cramped formalism produces a strange result: Even though the Court has told us that cram-down valuations are supposed to limit a secured creditor’s risk, we’ve adopted a new valuation standard that turns entirely on the debtor’s desires — creditors be damned. Instead of holding the valuation hostage to the debtor’s “particular use,” I would hold that the appropriate value is the market price of the building without restrictive covenants.[1]
The majority purports to rely on Associates Commercial Corp. v. Rash, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), but Rash never adopted today’s strict “particular use” interpretation of replacement value. The Court was more flexible: “Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property.” Id. at 965 n.6, 117 S.Ct. 1879. After all, the bare notion of “replacement value” isn’t self-interpreting. A conservation-minded owner may prefer to see his lands stay wild. He may adopt an easement to keep them that way, and may not care that this drastically reduces the commercial value of the property. But the owner’s preferences don’t shape the market value of an undeveloped acre — which is what the owner who actually did buy new replacement property would have to pay.
What interpretation of “replacement value” should we use? Unhelpfully, Rash offers few specifics on how the nature of the property and the debtor should affect valuation.[2] But Rash expressly notes that replacement value shouldn’t include certain warranties and modifications that drive a *649 wedge between private value and market value. See id. And Rash was unambiguously motivated by a desire to reduce what it saw as the “double risks” that cramdowns pose for creditors: “The debtor may again default and the property may deteriorate from extended use.” Id. at 962, 117 S.Ct. 1879. With these risks in mind, the Rash Court adopted a broad standard — the typically higher replacement value over the typically lower foreclosure value — that would give secured creditors their due protection. See also Till v. SCS Credit Corp., 541 U.S. 465, 489, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) (Thomas, J., concurring) (noting that creditors are “compensated in part for the risk of nonpayment through the valuation of the secured claim” because Rash used a “secured-creditor-friendly replacement-value standard rather than the lower foreclosure-value standard”). A moment’s reflection reveals why today’s holding is at odds with these motivations: The majority’s valuation falls well below what the secured creditor would obtain from an immediate sale.[3]
In short, the majority has adopted a test that is not dictated by the letter of Rash and is contradicted by its reasoning. For these reasons, and those offered by Judge Clifton in his panel opinion, In re Sunnyslope Hous. Ltd. P’ship, 818 F.3d 937 (9th Cir. 2016), I dissent.

. In this case, the price a buyer would have to pay on the market for like property may be closely approximated by "foreclosure value.” That coincidence drives the majority’s analysis, but it does nothing to answer the real question presented by this case: Whether the market valuation commanded by Rash turns on a debtor’s idiosyncratic use of the particular property. It does not.

. The fact that Rash does not adopt a strict definition of "replacement value” and offers little guidance on how to apply it has been widely appreciated by other courts and commentators. See, e.g., Charles Jordan Tabb, Law *649 of Bankruptcy 741 (4th ed. 2016) (describing footnote 6 of Rash as a "substantial opening” that has allowed a wide variety of valuation standards to flourish). I make no effort to defend Rash, which has been subject to abundant criticism along these lines. But I also see no reason to step beyond it, as today’s majority does.

. In my view, much of this risk will be passed on to borrowers in the form of higher interest rates — in which case, the joke’s on future Sunnyslopes. Regardless, the Supreme Court expressly held that "[ajdjustments in the interest rate and secured creditor demands for more ‘adequate protection’ do not fully offset” the risks of cramdowns. 520 U.S. at 962-63, 117 S.Ct. 1879 (quoting 11 U.S.C. § 361). Of course, one reason for ex-post credit risk might be Rash itself: It’s hard for parties to bargain in the shadow of an unclear rule.